Good morning, counsel. May it please the court, my name is Earl Partington, and I am the attorney for ex-Navy Chief Petty Officer William Connor, the respondent of Pellington Escapes. I'd like to reserve five minutes of my time for the rebuttal if I may, and ask the court to forgive me if I cough a little. I seem to have a cough left over from an illness that won't go away. The principal issue in this case is what is the duty of a criminal defense attorney when he's faced with a client who has a viable insanity defense and an extensive mental health history record? Is that attorney required to consult a defense psychiatrist or psychologist? We know in this particular case that was not done. Didn't he consult with the two doctors who were witnesses for him? I don't even know what to ask those doctors, because as noted in the cases I've cited, one of the important functions of a defense expert in this situation is to help the attorney prepare for the examination of the doctors. And in this case, as I've noted in the brief, contrary to the findings of the magistrate judge and adopted by the district court, the questioning of the doctors by both the attorneys and state court was completely inaccurate. There was no rational, logical basis to the question. Hawaii, unlike federal law, permits either cognitive insanity or volitional insanity. And yet at no time in the trial did either attorney sit down and ask the doctors who opined that Connor was insane under both tests, why was he insane under the cognitive test? Explain that, doctor. Why was he insane under the volitional test? Explain that, doctor. The problem we have here is that these attorneys hadn't prepared the case. They didn't know what to ask, because they had not talked to a defense psychiatrist or psychologist to tell them what to ask. I'd like to point out that I think that the government, or the respondent rather, has avoided addressing the issue in this case, because the test is not whether this was a reasonable, practical decision made by the defense attorney. The question was whether there was a reasonable decision not to investigate. In the 28-J letter sent by opposing counsel... Well, the case I would cite now is Wiggins v. Smith, although I think Wiggins v. Smith, which is 123... It didn't exist at the time. No, it didn't exist at that time. So don't you have to find that it's contrary to or an unreasonable application of the case that existed at the time? Yes, I would agree, but I think Wiggins v. Smith merely restated what had previously existed under Supreme Court precedent. And what's, I think, interesting about Wiggins v. Smith is that if you switch it from the death penalty sentencing context to the insanity context and make a few tweaks in the facts, this case is Wiggins v. Smith. And keep in mind that when Wiggins arose down below in the trial court, this case had yet been filed in the federal court. So I think that Wiggins is very, very appropriate here. And I would note that what the Supreme Court said in Wiggins is extremely important, because it says, Our principal concern in deciding whether the defense attorneys exercise reasonable professional judgment is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable. In assessing counsel's investigation, we must conduct an objective review of their performance, measuring for reasonableness under professional norms, citing district law, which includes a context-dependent consideration of the challenge conduct as seen from counsel's perspective at the time. That's at page 2536. And then the court said at page 2541, We base our conclusion on the much more limited principle that strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigations. A decision not to investigate thus must be directly assessed for reasonableness in all the circumstances. What good is the requirement in AIC that a defense counsel must have an expert available if defense counsel makes the choice not to hire the expert, notwithstanding the number of psychiatrists and psychologists that Connor had seen, his extensive record, the fact that he was pending retirement or separation from the Navy for a paranoid delusional condition. All of these things cry out to say, I as a lawyer need someone to help me assist in preparing this case. Do I misunderstand that the two doctors who testified, both testified that he met the test for whatever you call it, insanity, basically, that he did qualify for that defense, that he was, should not have been convicted? Yes, my view was that he should have been found insane. Didn't both doctors testify? They did indeed, but the trial judge rejected their testimony. Yes, well, I'm a sort of unusual, I think. Was there another doctor on the other side? Well, there was a third doctor who did testify, but he didn't testify. No, so the only medical testimony there was was that he was insane. That's correct. And the trial judge rejected the testimony. For those of us who know the trial judge, it's understandable. But that's the question of whether, you know, there may be other grounds for questioning the conviction, because is it really an effective assistance to get two court-appointed doctors to say that your defendant is insane and to tell that to the judge? What more do you need to do as a lawyer? Well, I think you need to present it in a cogent, clear manner. The manner in which it was presented was completely inept. For example, as I noted in the brief, it was very important the distinction between delusions and hallucinations. When Connor was on medication, he didn't hallucinate. The trial judge thought that delusions and hallucinations were the same thing. A delusion is a false belief. An hallucination is you're seeing something that's not there. One can be delusional throughout whether one is hallucinating or not. Yet the trial judge thought that because he wasn't hallucinating, then he wasn't really delusional, and therefore he wasn't really insane. Yet none of this was explained to the trial judge. More importantly, the whole process in mental illness, it's not something that you're mentally ill now, you're not there. It's a developmental process. And at no time did the attorneys make any effort to tie Connor's mental history, his development of his mental illness, into the defense. That is, go back and ask the doctors to talk about how his paranoid delusional condition came on, how it affected him, how it affected him at the time of the offense, and the importance of what went on prior to that. Let me ask you again this question. Did counsel consult with these two court-appointed doctors about how to present the defense? Yeah, he talked to them about their opinions. I don't think it's fair to say he consulted with them on how to prepare the defense because they weren't there to help him prepare the defense, or either of these two attorneys. And I don't think they could. I think it's a conflict. They had a duty to the court, not to the defense attorney. Well, that's the question. I mean, if the consultation with the qualified doctors, he could have hired these two doctors if they hadn't been appointed by the court, and that would have been perfectly fine. Yes, if they hadn't been appointed by the court. But you say that using them as the doctors he consulted with is ineffective because it's an inherent conflict, that they can't perform that role? No, I'm saying that using them to prepare the case is ineffective because those doctors have an inherent conflict. They were appointed by the court. It's their duty to advise the court. It's their duty to advise the defense. Well, that's what I said. You're saying there's an inherent conflict. By the doctors. Yes, on the part of the doctors. That's correct. What I'm saying is defense counsel had a duty to hire his own defense psychologist or psychiatrist to help him to prepare. Now, I think considering that these court-appointed doctors are paid a minimal amount of money and are not going to spend hours with you preparing, there's a problem when you have someone like Connor with his extensive mental history. You need to have somebody who's going to take the time to talk to the doctors, particularly the military doctors who said they were forbidden to offer opinions, to talk with them and then to talk with the family to do the history, if you like, the psychiatric history of this individual. The government alleges, well, counsel talked to the family. Well, what good is counsel talking to the family if he doesn't have the training to know what's important? This is why you need a defense psychiatrist or psychologist who can meet with the family members, who can talk with the doctors, who can review the medical history, and then sit down and say to the attorney, Mr. Attorney, this is what you need to ask. And maybe then, if he had done that and asked the two doctors to testify, that might have been fine, although I think it would have been desirable to call a defense psychiatrist who put in all the hours that would be required in a case like this, particularly where the stakes are so high. Connor lost everything. No? Does the rule, your proposition, in effect lead us to what amounts to a per se rule? That is, when you've got an insanity defense, at least there's a possibility that it's ineffective assistance of counsel for defense counsel not to retain an expert, not necessarily a witness, an expert consultant at least. You may make a judgment whether or not to have somebody else testify, but it would be ineffective assistance of counsel not to retain an expert consultant. Well, I think it would certainly be incompetent. Whether it's ineffective, you have to go to the second prong of Strickland. But I think that where the state... But you said, as a per se rule, it meets the first prong of Strickland. That's correct. Now, in this case, you have uncontested evidence that he's crazy, and yet the judge rejects it. I say here it's pretty obvious that the second prong of Strickland can be met if the lawyers are properly prepared and produce a doctor of their own to help prepare them and also to testify. I think it's crystal clear that Conor would have been acquitted by reason of insanity and would not have lost his military pension. I don't think the second prong is a real issue here. I think the real issue is addressing whether the choices made by the two defense attorneys here not to investigate by hiring their own doctor and to help them prepare was a reasonable choice under the circumstances. And as the Supreme Court notes in Wiggins, wouldn't you think it would be reasonable if somebody came to you, a fairly experienced criminal attorney, someone came to you and said, Look, I'd like you to handle this case with an insanity defense. We've got two doctors appointed by the court, and they're both going to testify to the guy's craziness. And the state's not going to present any other contrary medical evidence. Would you think it was really necessary to go out and hire somebody else? Yes, it might as well be yes, because how would I know how to question those doctors? And more importantly, in this case, the defense didn't know the state was not going to call the third doctor who found him sane. When they went to trial, nothing prevented the state from calling him. The state had not agreed to roll over, so to speak. In this case. And, in fact, there was very aggressive cross-examination by the prosecutors showing how little time overall the doctors had spent with Connor. A lawyer has to prepare a case. I mean, it doesn't matter that I've got two doctors. They're going to testify. The state doesn't seem to be very aggressive in this case. But I've been a lawyer 34 years. I don't know the questions to ask these doctors. I don't know how to have them explain the matter. And, more importantly here, neither of these doctors were forensic psychiatrists or psychologists. They're clinical. They treat. And the one thing I've learned in all my years of practice is it is so important to have a forensic psychologist or psychiatrist, someone who can speak to the court in the court's language, because that makes all the difference in the world. Unfortunately, a lot of psychologists and psychiatrists are very good in their field, but when it comes to communication, they fall flat on their face. And if you get a trial judge like this one, who feels that she knows more about the subject than the experts, you get the kind of response. And you can't do it over. A lawyer has to prepare. And the problem we have here is there was no adequate preparation. Now, keep in mind, this federal habeas case was decided in the pleadings. At no point has been Connor permitted to present the evidence that should have been presented, one, to show that his attorneys fell below the standard of the community, secondly, to present, in this case, a forensic psychologist to testify as to why he was crazier than a balloon, in this case, and shouldn't have been found guilty. There's something seriously wrong when the respondent can come in and say, this was a tactical choice, but we can't come in and show why it isn't. I mean, I submit that on this record, particularly in the face of Wiggins, this case should be remanded for entry of judgment in favor of Connor. But alternatively, we should ‑‑ I suggest that the court should send this back at least for an evidentiary hearing and give Connor a chance to prove what he's been trying to prove. I reserve the rest of my time. Thank you. Good morning, Your Honors, and I'd like to begin by thanking you for moving the argument from San Francisco at that time and also bringing it here. Thank you also to the defense counsel. Probably in no specific order, I'd like to start by saying, you know, it's not exactly true that he wasn't given the opportunity to develop his record. I'm sure at some point this court has reviewed the records and findings in this case that were before the district court. If you'll notice, glaringly absent from the amended 2254 petition that was filed by counsel, so we shouldn't consider it with any kind of extra leniency because it was pro se, was the absence of any factual allegations to support his contention with regard to what wasn't done. Furthermore, the repeated characterization of a failure to investigate. That's not actually fair. It was a three‑panel. Well, let me not be presumptuous in mistaking that what's called a three‑panel procedure. Three doctors are appointed by the court to examine an individual. Okay, that was done in this case. Two of the three came back insane. To speak in short, insane. The third doctor did, so what defense counsel did, which was reasonable at that time, consulted with the two doctors that were for him. He asked them, do they need anything else? Do they need to interview anyone else? They said no. Did he stop there? No. He spoke to the defendant's wife. He spoke to his friend's coworker. More importantly, he spoke to the third doctor that wasn't for him and tried to persuade him to change his opinion. Now, I hear what counsel professes at this juncture as an inept investigation and also as something along the lines that there was something less than clear or coherent with respect to the testimony elicited by defense counsel. However, when you look at counsel's own pleadings, in the State Court brief when he was arguing that there was sufficient evidence, well, what he said, and I quote, is that the doctors, both doctors had reasoned opinions for their conclusions that the defendant lacked substantial capacity. Excuse me. Now, mystically, when he's given up the sufficiency claim, there was something wrong with their testimony. There was something unclear. There was something this and there was something that, but what he never does is specify what it was, which brings me to this point. The stand here was straightforward. One of the things he told us that the trial judge was left not to understand the distinction between delusion and hallucination. Isn't that an example of something that he contends should have been drawn out better during the examination of the testifying doctors? No, actually that is an example of his self-serving conclusion, because he points to nothing in the record to support that characterization, nothing at all. And, in fact, there was testimony drawn out by, through cross-examination and just regular examination, direct examination, with respect to whether or not the defendant was malignant. The contention posited by this defendant is that because he was hallucinating, therefore, he wasn't responsible for his act. However, there's nothing but self-reporting to substantiate that contention that doctors admitted that he had underrepresented, if not lied about his condition to the military doctors, which was before the act, which gave – it raised the question of – Was that in front of the trial judge at the trial, or did that come in at the time of the motion for new trial? At the trial also, Your Honor. At the trial stage as well? Correct. The basis for the doctor's opinion was thoroughly explored, and it was brought to the trial judge's attention in her findings of fact. And she was aware of proceedings that occurred with respect to his mental condition before the act. So that was clear. She was as clear that there was information brought subsequent with respect to his evaluation, mental evaluation, after the offense. But that misses the point of the Strickland analysis. It's whether or not what counsel did at that time was objectively reasonable. You have a strategic decision by counsel, first of all, in consulting a defendant. We need to stop with this self-defense contention. It's ridiculous. It will never fly. Having done that, he successfully persuaded the defendant, your only viable defense is the insanity. Having come back with a two-one split, if you will, he decides, let's weigh a jury. Let's go just with the judge. Now, those are the facts. That's the circumstance. Let's follow the strategic decision. I'm not saying this equates to the professional competence question by itself, but is there an explanation, is there a strategic or tactical decision as to why not to hire a defense consultant? Is there any advantage in not hiring someone to give guidance to the counsel as he's formulating his questions or developing his case? In this particular case, sure, because none was required. Neither doctor, when defense counsel consulted them, said they needed anything else. Where in the record do you have one iota of evidence if you didn't see any confusion on the part of the discourse between defense counsel with those doctors such that he could have thought, well, you know, I really don't understand what you're saying. I understand the argument. No, no, no. Actually, the argument says it's not necessary, and indeed, frankly, if I'm sitting there holding the hand I'm holding, and I've got two doctors from the panel saying that he's insane, I may feel I've got a pretty good hand and don't have to do anything else. But when we talk about a strategic or tactical decision, we're usually talking about a choice. There's a reason not to go down a certain course, and I'm not sure I understand here if there's any affirmative reason for him not to seek additional assistance from a defense consultant. Whether or not you have that person testify is a different question, but is there a reason for him not to try to get the help from a consultant? And I'll be honest in saying I'm not sure that there is any reason to turn that down. Now, that's not the same question. That may not be unprofessional. He may think he's got a good enough hand, and that may be a reasonable professional judgment. But when you describe it as a strategic decision, I'm not sure I understand that because I don't think there's any downside other than the expenditure of money, and that's not his problem. There's not a downside to getting the help which Mr. Partington argues he desperately needed at trial because it turned out that he didn't persuade the trial judge. Now, I understand that's after the fact, but, okay, here I am. I've got these two people wanting to testify. Is there a reason not to go out and get the additional help, or is it simply that he made the judgment he didn't need it? If I led the court to believe there was a strategic reason I misspoke, what I'm saying is under the Strickland standard was it objectively unreasonable not to, unquestionably not. I may have misunderstood what you said. I thought you were saying there was a specific reason not to do that, and I couldn't understand what that was. No, no. I'm saying under Strickland that's the standard we're held by. You'd agree there's no downside to hiring him. No, I would agree there's no downside in hiring a 50, but as this Court has recently said, then the question becomes at trial, are you going to be able to put on 50 cumulative experts? Or could you be more persuasive? I mean, the question here, it seems to me, is in a sense, it's very unusual to have two unopposed experts on the question of mental competence and then have a verdict like this or a judgment like this. So the question is what went wrong, perhaps. And if what went wrong is a product of ineffective assistance of counsel for not presenting the defense as alleged, then perhaps there's a case. And why not have an evidentiary hearing? Because there was no basis presented to the district court for an evidentiary hearing. These conclusory allegations that were developed through specifically faulted 34-year experience counsel, you can't fault the district court for that. He gave them nothing. He didn't attach any affidavits. This Court is well aware of the procedures in the Ninth Circuit under U.S.C. 2246 where you can expand it if you request that. You can ask for a motion. You can ask for affidavits. You can ask for depositions. Was any of this done? No. And what's more telling is the affidavit that was finally attached when it came to the certificate of appealability was by a professed doctor who in the first part of her affidavit makes clear that she was helping defense counsel since the inception of this in state court. Now, so rather than bring this to the state's court attention, rather than bring this to the district court's attention, we'll just file that abbreviated amended petition for habeas corpus relief, which the court has. We'll give that to the district court. And then complain later when through no evidentiary showing but just self-serving conclusions, which this court recently has said isn't enough, we'll say, okay, they abused their discretion then in not ordering evidentiary hearing. That's phenomenal, John. How can we attribute an abuse of discretion to the district court when they were never presented with anything other than this? I say that another psychologist should have been appointed and mystically without explaining why that would have made a difference. Aki versus Oklahoma doesn't say that. Well, you know, actually, I think there's a fair theory. I don't buy the per se theory that you need to have, particularly that you need to have to hire someone. But there's a fair theory that if you rely on court-appointed psychologists and psychiatrists, you really aren't going to get this quality of testimony that you are. This has come up in many other jurisdictions where basically we faulted people for relying solely on court-appointed examiners with competency examiners. So it's not an unusual – this isn't really particularly an unusual approach in an effective assistance of counsel plan to say, look, you shouldn't have relied on the court-appointed psychologists because they are there to serve a different purpose. Now, whether it's constitutionally ineffective, I don't know, but it's not a radical theory. No, I'm not suggesting that it is. I'm just saying if we're bound by the standards in some rule of court. No, it sounds like you'd have a pretty easy evidentiary hearing. It also sounds like it wasn't warranted, and the standard is did the lower court abuse its discretion on having it. No. This court has recently, as Summerlin, Beardsley, Babbitt versus Calderon, you Ninth Circuit folks, if you will, have repeatedly said self-serving conclusory allegations aren't enough. You have also made as clear that you can develop those self-serving conclusory allegations through the discovery process, which includes Alfred Davidson declarations. Was it done here? No. So I'm not trying to be unreasonable and say, oh, could it have helped having another one? Sure. Five more could have helped. But has the Ninth Circuit also said that cumulative evidence isn't enough to warrant an evidentiary hearing? Sure. Could we go back and have a simple evidentiary hearing? Sure. But the question is did the court abuse its discretion on having it, and that is unquestionably no. Counsel, I agree with you, Your Honor. There might be some of that proposition that you have just alluded to with respect to court-appointed psychologists floating out there. I'm unaware of the case, so I'm not going to dispute you on that point. However, is that the question I'm restricting? No. The question is what counsel had before, and under that circumstance, was it objectively unreasonable? No. Let me ask you one question about facts here. Mr. Partington said that counsel did not know that it would be two to nothing, that for all counsel knew it would be two experts against one expert. Is that your understanding? No, definitely not, Your Honor, because what's not in the record, but what's clear in the practice of the state is you file a witness exhibit, so counsel knew going in. Well, what does going in mean? When do you file a exhibit list? That depends on the different courts, but he would know prior to the start of trial. Well, I know, but you wouldn't hire your expert at the start of trial when you would have when you were preparing the case. Did he know when he was determining or preparing the case that there would be an uncontested insanity claim? I can't. I don't know. The record is silent on that issue. Well, we'd be able to determine from the record when the witness list was filed. Right. That's part of the state court record. Well, if it is, yes, it should be. But the point is that that shouldn't make a difference under this circumstance. No, but it makes a difference. I'm just trying to get the facts clear. You might view the case differently, or you might not, if you knew you had uncontested medical testimony that you didn't say. The witness list is going to come too late. I guess the question would be, and I don't know if the record speaks to that, whether he found out when he interviewed the third member of the panel that the third member of the panel knew he wasn't going to testify. You're not aware of anything in the record. The record is silent on that. But, well, you know, one thing, Your Honor, I'm not going to concede that it would have come too late. If the court is familiar with the record, this was a jury-waived trial. The judge bent over. I understand it, but the defense is going to have to make a decision whether to hire a consultant. Remember, in the first instance, we're talking about a consultant. Now, that decision, although in theory it could be made very late, you can always hire someone to give you help, you're really going to approach that question well before you get the witness list. Ordinarily, when you have a jury waiting. But the point I was going to make is this judge, this court, at the state level, bent over backwards to let the hearing drag on as long as possible to give counsel any needed motions to continue to present the case. And another thing that has to be said. Right, but that's, you know, a late-disposed expert is another matter. Sure, it's another matter. I mean, the witness list you filed, and they say, well, they didn't put on a witness, so therefore we're going to hire one later. It doesn't make much sense to me. I mean, the strategic decision had to be made much earlier. It did. And in this case, you know, the funny thing the record reveals is the strategic decision was there was two against none. So when we're saying now, did he not know, did he know, the circumstance I'm restricting is what he had before him. No expert. He was going against no expert. I think it's back to Ms. Reinhart's question. When did the defense counsel know that there wasn't going to be an expert on either side? And you said the answer was when the witness list was filed. So that's too late, really, to make a strategic choice. I mean, I think it seems to me, if you know there's two against one, unless you have some independent evidence that indicates otherwise, at least you have to assume that there's going to be a witness against you. So we just have to take, it seems to me, their decision for what it was. Well, Your Honor, also, if I may engage you in that point. Assuming, arguendo, that there was evidence that the state was going to call it shrink, now what exactly strategically should defense counsel do? Was that a technical term? I don't know what term. It's both psychiatrist and psychologist. It's much simpler just to say shrink. It is. It's much simpler to say shrink. But the point I want to make now is we can cavalierly characterize the strategic To do what? To rebut my two medical experts' opinion that I already have? To just add corroboration to that? I think the theory, as Your Honor has articulated, it's not necessarily to buttress it, but to permit a reasoned and clear presentation of the evidence. Well, you know, if that's the case, Your Honor, he's already conceded that their opinions were reasoned. So that's why I'm asking the court if it's aware of the record. Well, to tell you how to cross-examine. Excuse me? To tell a lawyer how to cross-examine a medical expert, that you would have the advice of a medical expert who would educate the lawyer into the medical terms, the medical issues, to say that he's the expert on this side, his report says this, that's all wrong. This is what you ought to ask him. Now, maybe lawyers know all of those things, and they're so smart they don't need advice from doctors about how to cross-examine doctors. But Mr. Partington says he probably wouldn't do a very good job, which may or may not be true, without the help of a doctor. Maybe he would. I don't know. But I know I wouldn't be able to do a very good job of cross-examining a medical expert without the assistance of a medical expert to tell me how to do it. I appreciate that, Your Honor. And bringing this case then back to the facts of the particular matter, Mr. Partington has not shown you any evidence of inept questioning on the part of defense counsel to suggest that he didn't know what he was doing. He declares that he does not show it to you. If I may also point you to this point. Mr. Partington, in his filings with this Ninth Circuit Court of Appeal, said he was only going to call a defense psychologist or psychologist to corroborate the two court-appointed panel doctors. At some point, we must stop just looking in the world for what would have been better and think, is there any evidence that what defense counsel did, as shown by Mr. Partington with evidence in the record, that evinces his objectively unreasonable conduct? And the answer is no. And I'll agree until the day is up. But hire another expert. I, like you, Justice, I wouldn't know what to ask. But I would know enough to ask a basic question. What is your opinion? What is it based on? To the extent that I can't understand what they're saying, I would ask him to please expound. This is a jury way of trial. The court also engaged the witnesses in questioning. Mr. Partington has not alluded to this court to one instance that you could say, whoa, the court didn't understand that. Now, if this is psychology 101, we need to draw a distinction between delusions and hallucinations. Sure we do, because we're learning it. But unless I speak and you indicate you don't understand, is it fair for me to assume then that you are understanding? We are jurists. We're not just the average people. We are average people in the philosophical sense. But to the extent that this was a jury way of trial and not just 12 reasonable people constituting a jury, can't we presume that the judge as a jurist has a slight bit of intellect? She has enough confidence in her ability. She obviously had more medical ability than the doctor. Not more than the doctor. They thought he was insane. Their doctor, she must have known more because she said he wasn't. But we're not arguing the sufficiency of the evidence, are we? No, no. I just said she must have a lot of ability. No, it's not actually fair for the judge because she's not here to expound. But what she did say, she said since the doctors couldn't point to anything definitive or objective to indicate other than he was malingering, and it could be the case at that point, no, she wasn't going to accept it. Moreover, there was a precipient independent eyewitness to the act. He testified there was nothing peculiar about what the defendant was doing. He came up to her, started annoying her. Then when this independent eyewitness saw a police car, he alerted the defendant to it. The defendant scurries off into the bushes. When the police car then passes, now he's back again with his attack. So it didn't seem like an aberrant act. It didn't seem anything other than a planned act. And here's a police car. Let me think. God, police car. No, I'd better run in the bushes and hide until the police are there because I'd rather not get arrested before I consummate this. So I don't think we should just – I cannot personally just cavalierly make light of it or suggest that the court knew more than the doctors. What the courts do is rely on the opinions of experts. When the experts' opinions are not such that they're credible, then it's within the court's discretion as fact finder to not accept it. And that's what happened in this case. Okay. And I'd like to make one last point, Your Honor, in summation, also with respect to the evidentiary hearing. The Rule 40 vehicle was available to this defendant. You go to the Rule 40 hearing, and specifically in the local rule construct, it provides for the taking of affidavits, pleadings on affidavits and declarations. That wasn't done. And you've got to also consider there are two counsels here that we're talking about as being ineffective. To say that the issue was raised, that's not fair, the issue being ineffective assistance counsel. You can't consider it globally. Because if the motion for new trial, second counsel wasn't trying to prove he was ineffective, so that issue was before the state counsel. Second counsel was only trying to prove first counsel was ineffective. Effective appellate counsel or post-trial counsel that have brought that post-trial Rule 40 motion, alleging he did not have the opportunity to develop the ineffective assistance of second counsel, he didn't conduct the hearing. Obviously, it was not in the interest of second counsel to establish his own ineffectiveness, nor was he trying to. So he would not have been precluded from bringing the Rule 40. In fact, in the opening brief filed in the state court, here again, filed by this counsel, he substantively said he's reserving the right to bring his Rule 40 hearing petition, at which time he would also supply the affidavits. Did he do it? No. Did he have the opportunity? Yes. And then he comes to this court and says, abusive discretion, not getting evidence. That's ridiculous. Thank you, Chris. I think the real question this court has to ask is why the court found these two doctors not credible. And this goes to the heart of the issue. Now, this argument that we have to present our evidence in our petition to the district court, excuse me, is absurd. One of the three cases cited in the counsel's Rule 28J letters this month expressly states to the contrary. More importantly, the instruction sheet attached to the Rule 2254 form states we're forbidden to. We have to have leave of court to do it. It's wonderful the counsel can come in here and say, we didn't offer evidence when the rules in the form tell us we're not permitted to, unless the district court permits us to do it, and then say we haven't proved our case. They say there's no evidence. Well, first off, there is evidence before the court, Dr. Kennedy's declaration. The court can get a good flavor of what we would offer in evidence if we were given it. Is this the declaration that was attached to the notice of appeal? No, this is to the request for a certificate of appealability. And that's done. I mentioned it here, and I put it in the brief, so the court could get an idea of what we could prove. But the district court is what we're talking about. That wasn't given to the district court prior to the time of rule. That's correct, because under the rules, we're not permitted to do it until we get past the pleading stage. You said that the sheet that you're relying on says you have to ask for permission to do it. Well, the cover sheet, and I quote the cover sheet in full on page 6, or part of it, excuse me, on page 6 of the reply brief. It says, additional pages are not permitted except with respect to the facts which you rely on to support your grounds for relief. No citation of authorities need be furnished. If a brief oral argument is submitted, they should be submitted in the form of a separate memorandum. 28 U.S.C. section 2246 states, on application of written habeas corpus, evidence may be taken orally or by deposition or in the discretion of the judge by affidavit. We never got to the evidence stage. In fact, we have three pages of factual allegations,  all we're required to do is allege the facts. Which, if established, would be sufficient. They want the court to adopt the rule, we not only have to allege the facts in our pleading, but contrary to what the statute says, we have to file all of our evidence at the time of filing the petition before we determine if we get an evidentiary hearing. Didn't you file any other paper before the district court? No, I filed the writ. They filed their response. I think I did a reply, and the magistrate judge came down with his recommendation. I objected to the recommendation since it was on the pleadings, and we're here. It is certainly very convenient for them to say we're supposed to do what obviously we're not permitted to do and obviously what the law does not require, and then come in here and say we haven't shown it. Well, excuse me, we have the right to rely on our pleadings, and if the court denied evidentiary hearing based on those pleadings, then we have a right to have this court say no, that what is pled is sufficient, and it's the function of the evidentiary hearing, not the pleading stage to prove your case. And certainly we have a lot that we can offer in terms of evidence at that hearing. Finally, I don't understand this argument that he didn't have to because he had these two doctors when these two doctors had no duty to the defendant whatever. And more importantly, what good is having the two doctors if you don't present the evidence as you've noted in a clear and cogent way? The claim that I've offered no citation to the record where the judge was confused about delusions and delusions, page 33 of the opening brief, two lines down from footnote 14 where it appears I've given the site where if you review the state judge's findings of facts, it's crystal clear that she doesn't have a clue of the distinction between hallucinations and delusions and that she concluded that because Connor wasn't hallucinating at this time, then he didn't have the delusions. And of course, as you can see from Dr. Kennedy's declaration, there's a big difference between the two. If you have delusions, you'll generally have it all the time. It's a false belief system. Connor believed people were persecuting him. He didn't always hallucinate. Sometimes he did. Sometimes God Julius Caesar spoke to him. And unfortunately, God Julius Caesar told him to stab this woman. But he's not criminally responsible. And if he had competent counsel who had obtained a defense psychologist or a psychiatrist, we wouldn't be here today. Thank you very much. Thank you, counsel. Thank you both very much. The case just argued will be submitted. The court will take a brief recess before what I hope will be the final case of the day.
judges: Reinhardt, Thomas, Clifton